13981

SMITH v. PRUDENTIAL INS. CO. OF AMERICA

(178 S. E., 124)

*Messrs. Haynsworth & Haynsworth* and *Watkins & Prince,* for appellant, 

*Mr. Leon L. Rice,* for respondent, 

January 17, 1935.

The opinion of the Court was delivered by MR. A. L. GASTON, ACTING ASSOCIATE JUSTICE.

This is a suit for disability benefits under a group policy issued by the defendant upon the plaintiff and other employees of Anderson Cotton Mills. The defendant's motion for a nonsuit and for a directed verdict were refused, and a verdict was rendered in favor of the plaintiff. The motion for a new trial was overruled, and judgment was entered for $372.01, representing the amount due on the policy at the time the suit was begun, with interest.

The sole issue raised by the exceptions on appeal is whether there was any testimony tending to show that the plaintiff became totally and permanently disabled within the meaning of the policy prior to its cancellation. There are three exceptions, all of which raise this question, that there was no evidence of such disability, as defined by this Court under the provisions of such insurance contracts, but that the evidence admits of only the one conclusion that she is still doing her same work in the usual manner.

The testimony for the plaintiff in this case tends to show that she was running ten and twelve sides in the spinning room at the Anderson Cotton Mills when the policy was issued on December 11, 1929. She testified that thereafter she "got disabled to work and they took my sides away from me because I could not keep them up." She then worked as a spare hand until she was refused work for

several nights and had to quit. She was unable to work for nearly three years, and was supported by the R. F. C. and the Salvation Army, and during this time her father went to the county home to be cared for. It does not appear that she did any work whatsoever during this time, but she was later employed by the Victor Monaghan Company from July 15, 1933, through June, 1934, and was working there when the case was tried. But she states that her sister now helps her to carry on her work, and that without her help she could not carry on her work now as a spinner. The medical testimony for the plaintiff shows that she is below par mentally, and has chronic pellagra which aggravates her condition, and that she suffers with fits, at which time she would be in a dazed condition without knowing anything. The doctors also testified that she has what is called recurrent pellagra, and in her present condition until the breaking out occurs she is able to do some light work without injury to her health. She also suffers with nervousness and loss of weight, and pellagra does affect the mind. The defendant's witnesses testified that she worked regularly at the Victor Monaghan Company for about a year and these witnesses claim that they had never seen her sister at any time assist her, nor did her present employers know that she was sick with pellagra during the past year. The medical testimony for the defendant shows that she was examined on September 19, 1932, by Dr. J. B. Latimer and that he did not find any acute breaking out then, but that she complained of weakness, nervousness, sore mouth, and breaking out on her arms. Dr. Latimer also testified that the plaintiff is not at all normal mentally, and that pellagra affects the mind.

It will be seen, therefore, that, while it is undisputed that she has been engaged as a spinner for the last twelve months, at and before the trial of the case on circuit; yet she testified that she cannot carry on her work without the help of her sister, which was disputed by the defendant; and the medical testimony shows that she is now suffering men-

tally and physically with the dreaded disease of pellagra, which began while the policy was in force, and which,. although recurrent in form, renders her incapable of working at times, and that a person in this condition, who wants to regain her health, should at least six months of the year not work at all, and that, unless she has proper diet and proper vitamin and proper treatment, she is going to continue always in the condition she is at present. Coupled with this impairment are the further facts that she is afflicted with nervous or fainting spells or epileptic fits; has become emaciated; was unable to work at all for nearly three years; and is only able now to do light work of less hours and fewer days with the help of her sister. In opposition to this contention the defendant claims that, because of curtailment by the mill, she did not work daily; that she quit work to go on the farm with her father; that she was a roving mill hand; that she delayed for two years to file her claim for disability; and that she was satisfactorily doing her regular work without help when the case was tried.

The case was tried twice, resulting in a mistrial on the first trial. Two Circuit Judges who heard the evidence submitted the case to the jury; and the second jury found for the plaintiff on these disputed issues of fact.

It is reasonably inferable from the testimony that the plaintiff quit work because of her diseased condition and inability to carry on her customary work, upon which she depends for a living in substantially her usual manner; that she honestly lost three years from work as the result of such disability and can now only carry on her work in a light way with help; that she depends on mill work for a living, and is neither a loafer, idler, nor malingerer; and that the defendant without just cause or excuse refused to pay her just claim before suit and is now liable under its policy contract.

Under the testimony in this case we think that the question whether plaintiff was "totally and permanently dis-

abled," as that phrase has been defined by this Court in connection with its use in insurance contracts, was undoubtedly an issue for the jury. *Wade v. Metropolitan Life Insurance Company* (S. C.), .... S. E. ..... (filed August 14, 1934); *Richards v. Supreme Forest Woodmen Circle,* 173 S. C., 63, 174 S. E., 907.

There was ample testimony to sustain the verdict, and it should stand.

The judgment is affirmed.

Messrs. Justices Stabler, Carter and Bonham and Mr. Acting Associate Justice G. Dewey Oxner concur.